UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| *ex rel.*, DAVID R. HOFFMAN, | ) | |
| | ) | |
| Relator, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 3:12-CV-237-TLS |
| | ) | |
| NATIONAL COLLEGE, a/k/a NATIONAL | ) | |
| COLLEGE OF KENTUCKY, INC., and | ) | |
| DOES 1 THROUGH 50, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Motion to Dismiss for Failure to Satisfy the Pleading

Requirements of Rules 8(a) and 9(b) and for Failure to State a Claim Upon Which Relief Can Be

Granted [ECF No. 13], filed by the Defendant, National College, on February 11, 2013. The

Relator, David R. Hoffman, has also filed a Motion to Convert Defendant's Motion to Dismiss to

a Motion for Summary Judgment Under Fed.R.Civ.P. 56 [ECF No. 19]. Because the Court

agrees that the False Claims Act allegations set forth by the Relator do not properly plead fraud

as required by Rule 9(b), and do not state claims upon which relief can be granted under Rule

12(b)(6), the Court will grant the Motion to Dismiss and dismiss the Relator's claims without

prejudice, with leave to re-file.

## PROCEDURAL BACKGROUND

On May 8, 2012, the Relator brought a qui tam action under the False Claims Act (FCA),

31 U.S.C. § 3729, filing a sealed Complaint [ECF No. 1] on behalf of the United States of

America and alleging three FCA violations. The Relator filed a sealed Amended Complaint

[ECF No. 8] on July 26, adding an inadvertently omitted paragraph containing allegations consistent with those in the rest of the original Complaint. The United States filed a Notice of Election to Decline Intervention [ECF No. 10] on October 22. Accordingly, the Court entered an Order [ECF No. 11] on November 28 to unseal the case and serve the pleadings on the Defendant.[1]

The Defendant filed its Motion to Dismiss [ECF No. 13] on February 11, 2013, along with a Memorandum in Support [ECF No. 14]. The Relator filed a Response [ECF No. 17] on February 28, and the Defendant filed a Reply [ECF No. 18] on March 11. The Defendant attached a copy of its Confidentiality and Non-Disparagement Agreement [ECF No. 18-1] to its Reply, prompting the Relator to file a Motion to Convert Defendant's Motion to Dismiss to a Motion for Summary Judgment Under Fed.R.Civ.P. 56 [ECF No. 19] on March 21. The Defendant filed an Opposition to Relator's Motion to Convert [ECF No. 21] on April 5. The Relator did not file a reply, and the time in which to do so has expired.

The Motion to Dismiss and the Motion to Convert are both fully briefed and ripe for this Court's ruling.

---

[1]In accordance with the Proposed Order submitted with the Notice of Election to Decline Intervention, the Court ordered that the Complaint be unsealed and served upon the Defendant. The Proposed Order did not request and the Court did not order that the Amended Complaint be unsealed and served on the Defendant by the Relator. It appears that the Amended Complaint, which contains an additional paragraph outlining the contract the Relator declined to sign and his allegations relating to the contract but is otherwise identical to the Complaint, remains under seal. However, because the omitted paragraph contains allegations consistent with the rest of the Complaint, and because the Relator cited the new paragraph in one of his filings (*see* Relator's Mot. to Convert 3, ECF No. 19) and the Defendant did not object in its response (*see* Def.'s Opp'n, ECF No. 21), the Court finds that the Defendant's Motion to Dismiss concerning the Amended Complaint is well taken. As part of this Opinion and Order, the Court will order that the Amended Complaint be unsealed.

## FACTUAL BACKGROUND

The Court draws the following facts from the Complaint and the Amended Complaint. *See Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009) (stating that "for purposes of the motion to dismiss we accept all factual allegations in the complaint and draw all reasonable inferences from those facts" in favor of the plaintiff).

The Defendant is a for-profit higher educational institution providing post-secondary educational programs and degrees for adult students. The Defendant owns and operates approximately 30 college campuses in six different states, including a campus in South Bend, Indiana. The Relator worked for the Defendant at its South Bend campus from August 30, 2010, through February 17, 2012, as a faculty member and course instructor.

The Defendant requires all faculty members to sign a document entitled "Confidentiality and Non-Disparagement Agreement" which states as follows:

> I . . . agree that, during the term of my employment and for one year thereafter, I shall not, in any communications with the press or other media or any student, other employee, student employer or prospective student employer, competitor of National College, accreditor, regulator, lender, or any other individual, company, agency or institution, criticize, ridicule or make any statement which disparages or is derogatory of National College or its affiliates or any of their respective officers, directors, employees, students or educational programs.

(Agreement, ECF No. 18-1.) The Relator alleges that the Defendant "specifically enacted this ban on the faculty members' speech to prevent faculty from disseminating truthful information which could affect the college's ability to collect and receive federally funded student loans." (Am. Compl. ¶ 17(a).) The Relator asked the Defendant to change the Agreement to punish only slanderous or defamatory statements, but the Defendant refused to modify the Agreement and terminated the Relator's employment based on his refusal to sign the Agreement.

3

The Defendant receives federal funds through Title IV of the Higher Education Act, which requires that colleges and universities maintain accreditation through a nationally recognized accreditation agency in order to receive Title IV grants and loans. The Defendant is accredited through the Accrediting Council for Independent Colleges and Schools (ACICS). ACICS publishes a document entitled "Accreditation Criteria Policies, Procedures, and Standards" that governs the conduct of schools accredited through ACICS. Accreditors from ACICS conduct on-campus visits as part of the accrediting decision. With regard to on-campus visits, Section 2-1-500 of the Accreditation Criteria Policies, Procedures, and Standards states as follows:

> During the visit, institutions are expected to make provisions for adequate consultation between team members and the faculty, administrative staff, and students. Some teams also may want to consult with the institution's board of directors or trustees and community leaders or employers. The team prepares a written report that covers each area reviewed at the institution and includes other information pertinent to an accurate evaluation.

(Am. Compl. ¶ 23(b).)

The Relator maintains that the Defendant knowingly violated the ACICS requirement to provide "adequate consultation between team members and the faculty" by requiring all faculty to sign the Confidentiality and Non-Disparagement Agreement. The Defendant intimidated faculty, the Relator argues, to prevent dissemination of truthful, negative information to ACICS accreditors and to fraudulently maintain its accreditation so that it could receive Title IV funds. Specifically, the Relator alleges that the Defendant violated the FCA by 1) knowingly presenting, or causing to be presented, to one or more officers or agents of the United States of America, a false and fraudulent claim for payment or approval, causing the United States to pay

4

out money it was not obligated to pay; 2) knowingly making or using, or causing to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the United States of America, causing the United States to pay out money it was not obligated to pay; and 3) conspiring with Does 1 through 50 to violate the False Claims Act, causing the United States to pay out money it was not obligated to pay.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). The court presumes all well-pleaded allegations to be true, views them in the light most favorable to the plaintiff, and accepts as true all reasonable inferences to be drawn from the allegations. *Whirlpool Fin. Corp.*, 67 F.3d 605, 608 (7th Cir. 1995).

The Supreme Court has articulated the following standard regarding factual allegations that are required to survive dismissal:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks, ellipsis, citations, and footnote omitted). A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Although the court must accept as true all well-pleaded facts and draw all permissible inferences in the Plaintiff's favor, it need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *see also Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012) (stating that a court need not accept as true "legal conclusions or conclusionary allegations that merely recite a claim's elements"). Legal conclusions can provide a complaint's framework, but unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim. *Iqbal*, 556 U.S. at 680; *see also Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). A plaintiff can also plead himself out of court if he pleads facts that preclude relief. *See Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). Finally, determining whether a complaint states a plausible claim for relief requires a reviewing court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## ANALYSIS

Because the Defendant attached a copy of the Confidentiality and Non-Disparagement Agreement to its Reply [ECF No. 18], the Relator filed a Motion to Convert Defendant's Motion to Dismiss to a Motion for Summary Judgment Under Fed.R.Civ.P. 56 [ECF No. 19]. The Court will first address the Motion to Convert, and then discuss the merits of the Defendant's Motion to Dismiss.

**A.** **Seventh Circuit Caselaw Does Not Support the Relator's Motion to Convert**

In his Motion to Convert, the Relator argues that because the Defendant attached a copy of the Confidentiality and Non-Disparagement Agreement to its Reply concerning its Motion to Dismiss, the Court should treat the Motion to Dismiss as a motion for summary judgment and give him opportunity to present evidence. Rule of Civil Procedure 12(d) states:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

The Defendant responds that attaching the Agreement is an exception to Rule 12(d), and that attaching the Agreement to its Motion to Dismiss does not amount to presenting a matter outside the pleadings.

The Seventh Circuit has held that, without converting a motion to dismiss to a motion for summary judgment, a district court may consider a document "referred to in the complaint, provided it was a concededly authentic document central to the plaintiff's claim (the usual example is a contract, in a suit for breach of contract)." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *see also Minch v. City of Chi.*, 486 F.3d 294, 300 n.3 (7th Cir. 2007) (citing *Tierney* and stating that "when a complaint refers to and rests on a contract or other document that is not attached to the complaint, a court might be within its rights to consider that document in ruling on a Rule 12(b)(6) motion to dismiss the complaint without converting the motion into one for summary judgment, so long as the authenticity of the document is unquestioned"); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred

to in the plaintiff's complaint and are central to her claim."). The rationale for the exception "is that, were it not for the exception, the plaintiff could evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved that his claim had no merit." *Tierney*, 304 F.3d at 738. Additionally, the exception is justified because a plaintiff is on notice that a document will be used as evidence when the plaintiff refers to the document in his pleadings and the document is central to his claims. *Id.* at 738–39.

The Court agrees with the Defendant that it properly attached the Agreement as part of its Motion to Dismiss. The Agreement is central to the Relator's claim; indeed, the Agreement is, in essence, the Relator's entire claim. Further, the Relator has not contested the authenticity of the Agreement, and the Relator refers to the Agreement in his pleadings. Finally, although this is not a breach of contract case, it is clear that the Agreement is a contract, which is the "usual example" of the type of document triggering the exception to Rule 12(d). *See id.* at 738. For all these reasons, the Court finds that it may properly consider the Agreement without converting the Motion to Dismiss to a motion for summary judgment pursuant to Rule 12(d).

Accordingly, the Court will deny the Motion to Convert and deny the Relator the opportunity to present extrinsic evidence regarding the Defendant's intent when it formulated the Agreement and mandated that its employees sign it. The Court notes, however, that because the Amended Complaint states that the Defendant enacted the Agreement to prevent its employees from revealing truthful, negative information to ACICS accreditors (Am. Compl. ¶ 17(a)), the Court must presume this allegation to be true for the purposes of the Motion to Dismiss. *Whirlpool*, 67 F.3d at 608. Further, the Court will consider the Relator's proffer with respect to his emails concerning the Agreement, though, as discussed below, the Court finds that the

Relator has failed to plead that any truthful, negative information existed that would have actually caused ACICS to revoke the Defendant's accreditation.

**B.      The Relator's Claims Must be Dismissed under Rules 9(b) and 12(b)(6)**

The Defendant argues in its Motion to Dismiss that the Relator's claims should be dismissed under Rule 9(b) because they fail to plead fraud with particularity, and should be dismissed under Rule 12(b)(6) because they do not plausibly suggest that the Defendant violated the FCA. The Court will examine the Defendant's arguments in turn.

**1.      *The Relator has Failed to Plead Fraud with Particularity As Required by Rule 9(b)***

The False Claims Act imposes civil liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;" "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;" or "conspires to commit a violation of" either of the preceding clauses. 31 U.S.C. § 3729(a)(1)(A)–(C). The term "claim" under the FCA "means any request or demand, whether under a contract or otherwise, for money or property . . . that . . . is presented to an officer, employee, or agent of the United States." *Id.* § 3729(b)(2)(A).

"The FCA is an anti-fraud statute and claims under it are subject to the heightened pleading requirements of Rule 9(b)." *United States ex rel. Gross v. AIDS Research Alliance-Chi.*, 415 F.3d 601, 604 (7th Cir. 2005). To comply with Rule 9(b) for an FCA claim, a plaintiff must "allege 'the who, what, when, where, and how: the first paragraph of any newspaper story.'" *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003)

9

(quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). This requires an allegation that a defendant "said something knowing at the time that the representation was false (or not intending to perform)." *Garst*, 328 F.3d at 378. Generalized, conclusory allegations do not satisfy the particularity requirement of Rule 9(b). *Gross*, 415 F.3d at 605. Rather, "[f]alse claim allegations must relate to actual money that was or might have been doled out by the government based upon actual and particularly-identified false representations." *Id.* As the United States District Court for the Southern District of Indiana has stated:

> The who, what, where, and when of a False Claims Act allegation must specifically identify an actual false claim or statement and specify how or why Government payment of money was conditioned thereon. A relator must plead facts as to the time, place, and substance of a defendant's alleged fraud[s], and who engaged in them. Specific dates, amounts, and contents of false claims or statements must be provided, as well as specific facts showing that a specific payment of money by the Government was conditioned on those claims or statements. Actual claims must be specifically identified because it is the claim for payment that is actionable under the Act, not the underlying fraudulent or improper conduct.

*United States ex rel. Lusby v. Rolls-Royce Corp.*, No. 1:03-CV-0680-SEB/WTL, 2007 WL 4557773, at *5 (S.D. Ind. Dec. 20, 2007) (citations omitted). *See Olson v. ITT Educ. Servs., Inc.*, No. 1:04-CV-0647-JDT-WTL, 2006 WL 64597 (S.D. Ind. Jan. 9, 2006) (dismissing FCA claims under Rule 9(b) for failure to plead fraud with particularity); *United States ex rel. Diaz v. Kaplan Univ.*, No. 09-20756-CIV, 2011 WL 3627285, at *4–7 (S.D. Fla. Aug. 17, 2011) (same).

The Court agrees with the Defendant that the Relator has failed to adequately plead his FCA claims under Rule 9(b). The Relator appears to assert that the Defendant has violated the FCA in two ways: first, by fraudulently convincing ACICS to certify its accreditation; and second, by continuing to submit applications to the United States for Government-funded student loans while knowing that its accreditation was obtained by fraud. The only basis for the Relator's

10

underlying claim of fraud is that the Defendant requires employees to sign the Confidentiality and Non-Disparagement Agreement; the Relator argues that the Defendant knowingly flouts the ACICS requirement to provide "adequate consultation" with accreditors by requiring employees to sign the Agreement. Such "general allegations," *Olson*, 2006 WL 64597, at *5, do not plead fraud with the particularity required by Rule 9(b).

The Relator does not allege any statement that he or any other faculty member of the Defendant made to an accreditor which was false because of the Agreement. He does not allege who made false statements to ACICS, the substance of any such statement, when such statements were made, where they were made, or the means by which they were communicated. He does not allege what specific Government money was paid as a result of the ACICS certification of the Defendant. While making false statements to an accrediting body could make out an FCA claim, *see Diaz*, 2011 WL 3627285, at *6–7, allegations of such false statements must be pleaded with particularity. Similarly, with respect to his general claim that each and every request for Government-funded student loans was a false claim, he does not allege who made these requests, the substance of such requests, when such requests were made, where they were made, or the means by which they were communicated to the Government. He identifies no specific claim on the Government for student loans, or what Government money was paid as a result of such claim. Further, these requests for Government-funded student loans are predicated upon the alleged false statements to ACICS, which are not adequately pled. As discussed in more detail below, the Relator fails to identify a single factual assertion that he or any other employee would have disclosed to ACICS but for the Agreement, and that would have affected the Defendant's accreditation status. Finally, in his Response, the Relator fails to offer any rebuttal

11

to the Defendant's arguments relating to failure to plead fraud with particularity under Rule 9(b).

For all of these reasons, the Court finds that the Relator's Amended Complaint fails to plead any

claim for fraud with the degree of particularity required by Rule 9(b), and the Court will grant

the Motion to Dismiss on this basis.

**2.** *The Relator has Failed to Plausibly Suggest Recovery Under the FCA As Required by Rule 12(b)(6)*

A court must dismiss claims under Rule 12(b)(6) when the claims fail to plausibly

suggest the possibility of recovery. *See Twombly*, 550 U.S. at 570. The Defendant argues that a

limited number of avenues of relief exist under the FCA, and that because the Relator has failed

to plausibly state a claim for relief under any potential FCA theory, the Relator's claims must be

dismissed under Rule 12(b)(6). The Relator argues in his Response that he has properly alleged

claims for recovery under both the false certification and the promissory fraud theories of FCA

recovery. Because the Court finds that the Relator's claims do not plausibly suggest the

possibility of recovery under either theory, the Court will grant the Motion to Dismiss.

The United States Supreme Court has stated that the False Claims Act was "intended to

reach all types of fraud, without qualification, that might result in financial loss to the

Government." *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968). Nevertheless, "not

all minor regulatory violations give rise to an FCA claim." *United States ex rel. Lamers v. City of

Green Bay*, 168 F.3d 1013, 1019 (7th Cir. 1999) (citing *United States ex rel. Hopper v. Anton*, 91

F.3d 1261, 1265 (9th Cir. 1996)). Therefore, the Court must determine whether the Relator states

a claim for relief under an appropriate theory of FCA recovery.

12

The Seventh Circuit discussed the promissory fraud theory of recovery under the FCA in *United States ex rel. Main v. Oakland City University*, 426 F.3d 914 (7th Cir. 2005).[2] In *Main*, a university had submitted a phase one application to become eligible for Title IV educational funding. As part of that application, the university had committed to refraining from paying contingent fees to recruiters based on success in recruiting. The plaintiff pled that in spite of this prohibition, the university paid its recruiters contingent fees, and lied to the Department of Education when it stated that it would not pay contingent fees in the future. *Id.* at 916. Under these facts, the Seventh Circuit found that the plaintiff had pled a cause of action under the FCA, stating:

> The University "uses" its phase-one application (and the resulting certification of eligibility) when it makes (or "causes" a student to make or use) a phase-two application for payment. No more is required under the statute.

*Id.* Further, the Seventh Circuit stated that "[t]o prevail in this suit [the plaintiff] must establish that the University not only knew, when it signed the phase-one application, that contingent fees to recruiters are forbidden, but also planned to continue paying those fees while keeping the Department of Education in the dark." *Id.* at 917. This is so because "failure to honor one's promise is (just) breach of contract, but making a promise that one *intends* not to keep is fraud." *Id.*

Here, the Relator urges that the Defendant uses its fraudulently-obtained accreditation from ACICS to make or cause students to make phase two applications for federally-funded student loans. But, as the Defendant notes, the Relator has made no allegation concerning the

---

[2]Although the *Main* court did not use the term promissory fraud in its discussion, other courts have analyzed the *Main* holding in terms of promissory fraud. *See United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1173 (9th Cir. 2006).

phase one application for eligibility under Title IV. The Relator has not suggested that the Defendant filed a phase one application while knowing full well that it would violate an ACICS accreditation requirement by forcing faculty to sign the Agreement. Rather, the Relator's argument is that the Defendant knows its accreditation through ACICS is falsely maintained but continues to encourage students to submit applications for federally-funded student loans. The first problem with this theory is that the Relator has not alleged that the Defendant entered into some sort of promise while knowing the promise to be false as in *Main*. Thus, the Relator has not alleged a promissory fraud. Even in *United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166 (9th Cir. 2006), the case heavily relied upon by the Relator, the Ninth Circuit noted that "for promissory fraud to be actionable under the False Claims Act, 'the promise must be false when made.'" *Id.* at 1174 (quoting *Hopper*, 91 F.3d at 1267).[3]

The larger problem with the Relator's promissory fraud argument, which also goes to his argument for a false certification, is that the Relator has failed to plead that the Defendant made any claim that was knowingly false. The Relator's allegation is that the Defendant forced faculty members to sign the Agreement to prevent them from submitting truthful, negative information about the Defendant to ACICS accreditors. The Relator alleges that this decision by the Defendant violated the ACICS requirement that the Defendant provide for "adequate consultation" between faculty and accreditors. Therefore, the Relator insists, the Defendant knowingly submits a false claim every time a student applies for federally-funded financial aid

---

[3]It appears that the Relator believes that under *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 543 (1943), a claim for promissory fraud will lie where the extension of Government benefit absent an affirmative promise—as opposed to the original contract—is obtained through false statements or fraudulent conduct. Neither *Marcus* nor *Main* stand for that proposition, and the Relator has failed to cite to a case that applied promissory fraud under such circumstances.

because the Defendant knows that it is not in compliance with ACICS regulations. But this
conclusion does not follow from the plain language of the Agreement. The Agreement states that
a faculty member shall not "criticize, ridicule, or make any statement which disparages or is
derogatory of" the Defendant in conversations with accreditors. The Agreement does not
prohibit faculty members from communicating truthful information about the Defendant
including any lack of compliance with ACICS standards. Thus, it is not a fair conclusion that the
Defendant knew it was failing to provide the "adequate consultation" required by ACICS. Even
assuming that in accordance with the Relator's pleading the Defendant intended to prevent
faculty from disseminating truthful, negative information (as the Court must in considering a
motion to dismiss), it is not the case that the Defendant violated the "adequate consultation"
requirement by mandating that faculty members sign the Agreement. On its face the Agreement
does not violate the ACICS "adequate consultation" requirement because it is not clear exactly
what "adequate consultation" requires. An FCA violation must be made "knowingly," and the
FCA defines "knowingly" to mean having "actual knowledge of the information," acting "in
deliberate ignorance of the truth or falsity of the information," or acting "in reckless disregard of
the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). Under the plain language of
the Agreement, the Relator's FCA claims do not allege that the Defendant knowingly violated
the FCA. As the Seventh Circuit has stated, "[i]mprecise statements or differences in
interpretation growing out of a disputed legal question are . . . not false under the FCA." *Lamers*,
168 F.3d at 1018; *see also United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d
370, 376–77 (4th Cir. 2008) (finding that a dispute over contract interpretation did not
substantiate a false statement under the FCA). Therefore, because the Relator's claims depend on

the Defendant knowing that it was violating the "adequate consultation" requirement, these claims do not allege that the Defendant submitted any false claims at all.

The Relator's other proffered theory of FCA recovery is false certification. There are two types of false certification—express and implied. Because the Relator has not suggested that the Defendant submitted an express false certification that it was in compliance with the ACICS regulations, the Court will not analyze the Relator's FCA claims under the express false certification theory.[4] The Relator does allege that recovery is appropriate under the implied false certification theory of FCA recovery. As an initial matter, the Court notes that it appears the Seventh Circuit has never adopted the implied false certification theory of FCA recovery. *See United States ex rel. Kennedy v. Aventis Pharms., Inc.*, 610 F. Supp. 2d 938, 946 (N.D. Ill. 2009) (stating that "[s]ome courts (though, as best as this Court can determine, not the Seventh Circuit), have concluded that . . . relators can make out a claim under section 3729(a)(2) on what is referred to as a theory of *implied* false certification").[5] Nevertheless, the Court will analyze whether the Relator's pleadings plausibly suggest the possibility of recovery under this theory.

To state a claim under the implied false certification theory of FCA recovery, "it is necessary to allege not only a receipt of federal funds and a failure to comply with applicable

---

[4]Thus, the Relator's discussion of false certification in *Hendow*, a case that concerned express false certification, *see* 461 F.3d at 1173 n.1, is not relevant to the Court's discussion of implied false certification. To the extent the Relator means to argue that the continuing accreditation by ACICS was itself an express false certification fraudulently obtained by the Defendant and submitted on the Defendant's behalf by ACICS, such a theory would be foreclosed by the Court's analysis, below, relating to the implied false certification theory of FCA recovery.

[5]It appears that, at least as of 2011, the Second, Third, Sixth, Ninth, Tenth, Eleventh, and District of Columbia Circuits have recognized implied false certification as an avenue of recovery under the FCA. *See United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 306 (3d Cir. 2011).

regulations, but also that payment of the federal funds was in some way conditioned on compliance with those regulations." *Rodriguez v. Our Lady of Lourdes Med. Ctr.*, 552 F.3d 297, 304 (3d Cir. 2008) (overruled on other grounds). The theory behind implied false certification is "that the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment." *Mikes v. Straus*, 274 F.3d 687, 699 (2d Cir. 2001). Implied false certification attaches only when a claimant seeks payment from the Government "without disclosing that it violated regulations that affected its eligibility for payment." *Wilkins*, 659 F.3d at 305. Reading the implied false certification theory too broadly would allow it to be used as a "blunt instrument to enforce compliance with all . . . regulations." *Mikes*, 274 F.3d at 699. Instead, implied false certification should be used to enforce "only those regulations that are a precondition to payment." *Id.* Therefore, implied false certification should only apply "when a defendant submits a claim for reimbursement while knowing . . . that payment expressly is precluded because of some noncompliance by the defendant." *Id.* at 700. "A false-certification theory only applies where the underlying regulation is a 'condition of payment,' meaning that the government would not have paid the claim had it known the provider was not in compliance." *United States ex rel. Hobbs v. MedQuest Assocs., Inc.*, 711 F.3d 707, 714 (6th Cir. 2013).

   The Court agrees that the Relator has failed to plead that the Defendant submitted false claims to the Government under the theory of implied false certification by submitting claims while knowing that payment was expressly precluded. As the Defendant notes, even if the Relator had alleged the existence of some information that would have affected the Defendant's accreditation status, it would have resulted in a review process by ACICS, not immediate

17

revocation of accreditation. Thus, even if the Relator had alleged that he possessed information that would have affected the Defendant's accreditation if passed on to ACICS accreditors but which he did not disclose because of the Agreement, the Relator's claims would still not allege that the Defendant submitted claims for reimbursement while knowing that they were expressly precluded. The Court agrees with the Defendant that the requirement to afford "adequate consultation" was a condition of participation only, and not a condition of payment such that the Government would have refused payment on claims by students for educational loans because of noncompliance. *See Hobbs*, 711 F.3d at 714 (discussing the distinction between a condition of payment and a condition of participation in the FCA context); *Wilkins*, 659 F.3d at 309 (same). The Relator submitted no response to this argument from the Defendant.

The Relator merely argues that his allegation that the Defendant tricked ACICS into maintaining its accreditation suffices to state a claim for implied false certification. The Relator's position is incorrect because, as discussed above, the Relator has not alleged that the Defendant certified—even impliedly—an assertion that was false. Because the plain language of the Agreement shows that it was not a false assertion to believe that the Agreement was compatible with the ACICS "adequate consultation" requirement, the Defendant did not impliedly certify anything false by encouraging students to apply for federally-funded loans while also requiring faculty to sign the Agreement.

The Relator's allegations of implied false certification are also deficient because the Relator has failed to identify a single piece of truthful, negative information that he or any other faculty member would have expressed to ACICS accreditors but for the Agreement. Even when challenged on this point, the Relator failed to proffer such information. Instead, the Relator

18

asserts that he can prove through email correspondence that the Defendant intended the Agreement to prevent dissemination of truthful, negative information. (*See* Mot. to Convert 2, ECF No. 19.) But absent any allegation that such truthful, negative information actually existed, and that but for the Agreement it would have actually affected the Defendant's accreditation status, the Relator has failed to allege that anything about the Defendant's claims on the Government was *materially* false. *See Hendow*, 461 F.3d at 1174 (stating that under either the false certification or promissory fraud theory of FCA liability, the false statement or fraudulent course of conduct must be material); 31 U.S.C. § 3729(b)(4) (defining "material" under the FCA as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property"). The Relator states that "[i]t is axiomatic that [the Defendant] violates Department of Education regulations which require accreditation when [the Defendant] maintains its accreditation by virtue of fraud and the intentional concealment of information from ACICS." (Resp. 3, ECF No. 17.) But this is incorrect. It would only be a true statement if there also existed information that, when concealed from ACICS, would actually affect the Defendant's accreditation. Apart from such a factual predicate, no FCA claim by the Relator plausibly suggests the possibility of relief under Rule 12(b)(6).

For all the reasons discussed, the Court finds that the Relator has failed to plausibly suggest the possibility of recovery under either the promissory fraud or the implied false certification theories of the FCA, and the Court will grant the Motion to Dismiss on this basis also.[6]

---

[6]The Defendant additionally argues: that the Relator's third alleged violation—conspiring to violate the FCA—is barred because the Defendant has not identified a co-conspirator; and that the Relator has not stated an FCA claim concerning Government-insured loans because the Relator has not alleged

### C.     Opportunity to Amend

A court "should freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(1)(B)(2). *See Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) ("District courts routinely do not terminate a case at the same time that they grant a defendant's motion to dismiss; rather, they generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity to amend her complaint."); *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Com'n*, 377 F.3d 682, 687 (7th Cir. 2004) (stating that the general rule is that "the district court should grant leave to amend after granting a motion to dismiss"). However, a court should not grant leave to amend "where the amendment would be futile." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) (quoting *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)).

The Relator's FCA claims against the Defendant fail to state fraud with the degree of particularity required by Rule 9(b), and they do not plausibly suggest the possibility of relief because, among other reasons, they do not plausibly suggest that the Defendant's assertions were false. Furthermore, the Relator fails to identify any information which would have affected the Defendant's accreditation status but for the Agreement. Dismissal of the Relator's FCA claims is, therefore, appropriate. However, it appears that opportunity to amend the pleadings would allow the Relator to craft claims that comport with Rules 9(b) and 12(b)(6), *see Olson*, 2006 WL 64597, at *7 (dismissing without prejudice FCA claims and allowing the relator to cure deficiencies by amending his pleadings). It is not clear that amendments would be futile.

---

that the Government actually paid money to insure any loan. The Relator has not responded to either of these arguments. Because the Court finds that dismissal is appropriate under Rules 9(b) and 12(b)(6), it need not address these additional arguments by the Defendant at this time.

Accordingly, the Court will dismiss without prejudice and grant the Relator fourteen days to amend his FCA claims against the Defendant.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendant's Motion to Dismiss [ECF No. 13]. The Amended Complaint is DISMISSED WITHOUT PREJUDICE, with leave to file a second amended complaint within fourteen days of the date of this Opinion and Order. Further, the Court DENIES the Relator's Motion to Convert [ECF No. 19]. Finally, the Court DIRECTS the Clerk to unseal the dismissed Amended Complaint [ECF No. 8].

SO ORDERED on July 8, 2013.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION